IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CERTIFIED LABORATORIES, a division OF NCH CORPORATION, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:22-mc-60-K-BN |
| MOMAR, INC., | § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ed Kinkeade. *See* Dkt. No. 3.

Certified Laboratories, a division of NCH Corporation, has initiated this miscellaneous action by filing an Application to Enforce Arbitration Subpoenas, petitioning the Court under 9 U.S.C. § 7 to: (1) recover NCH's attorneys' fees and costs for Momar, Inc.'s ("Momar") failure to comply with an arbitration subpoena; and (2) order Momar to comply with an arbitration subpoena. *See* Dkt. No. 1.

The Court granted NCH's Emergency Motion for Expedited Consideration [Dkt. No. 4] and "expedit[ed] briefing on its Application to Enforce Arbitration Subpoenas [Dkt. No. 1] [by] ordering, under Northern District of Texas Local Rule 7.1(d), that Defendant Momar, Inc. must answer or otherwise respond to the Application by Friday, August 12, 2022 and NCH must file any reply in support of

its Application by Friday, August 19, 2022." Dkt. No. 7. "The Court also direct[ed] NCH's counsel to serve a copy of this Electronic Order on Defendant Momar, Inc. by Friday, August 5, 2022 and then file a certificate of service," *id.*, which NCH's counsel did on August 5, 2022, *see* Dkt. No. 9; *see also* Dkt. No. 8.

Momar did not file a response as ordered.

For the reasons explained below, the Court should deny NCH's Application to Enforce Arbitration Subpoenas [Dkt. No. 1].

## Background

By way of background, NCH explains that its

Application is brought pursuant to Section 7 of the Federal Arbitration Act ("FAA") to enforce subpoenas issued by Arbitrator Hugh E. Hackney (the "Arbitrator") to Momar in an arbitration pending in Dallas County, Texas. Specifically, NCH is engaged in arbitration against a former employee, Matthew S. Phillips ("Phillips") for violation of his employment agreement and the restrictive covenants therein. NCH is a marketer of industrial maintenance products. Phillips is a former sales representative for NCH, and is currently employed by Momar who manufactures and sells industrial maintenance products similar to NCH. On April 8, 2021, Phillips terminated his employment with NCH and immediately began working for Momar, taking NCH's customers and confidential information with him. Phillips successfully solicited over half of the customers he previously dealt with while employed by NCH to stop their business with NCH and alternatively to do business with Momar. Phillips provided NCH's confidential information to Momar and aided Momar in the development of Momar equipment and products designed to compete with NCH. NCH filed its Arbitration demand on May 21, 2021. The Arbitrator issued a Temporary Injunction (the "Temporary Injunction") on September 16, 2021, preventing Phillips, among other things, from using NCH's confidential information and soliciting customers with whom he dealt while an employee of NCH.

NCH notified Momar of the Temporary Injunction and requested that Momar provide sales data for Momar's sales to NCH's customers that Phillips dealt with as an employee of NCH. Momar agreed and

produced a limited number of documents identifying specific sales to NCH's customers. However, Momar withheld key categories of documents. Thus, in anticipation of the final hearing, previously scheduled for May 24-26th, 2022, NCH submitted, and the Arbitrator signed, a subpoena duces tecum to Momar (the "First Subpoena") for the testimony of a corporate representative with duces tecum consisting of a sole request for documents related to Momar's sales to NCH's customers related to Phillips. Momar objected to the First Subpoena and submitted a brief to the Arbitrator in opposition of the First Subpoena. The objection was heard as part of the pre-hearing conference on May 20, 2022, and counsel for Momar appeared and argued on Momar's behalf. The Arbitrator overruled Momar's objections, ordering a corporate representative of Momar to appear and testify at the final hearing and produce documents responsive to NCH's request.

On May 23, 2022, one day before the final hearing in the Arbitration, Momar notified NCH that it would not comply with the Arbitrator's order or the First Subpoena and would not appear at the final hearing or produce documents. In response, NCH filed an emergency motion to continue the Arbitration, which the Arbitrator granted. NCH submitted, and the Arbitrator signed, a second subpoena for Momar's testimony and the production of documents at the rescheduled final hearing (the "Second Subpoena")

Dkt. No. 1 at 1-3 (footnotes omitted).

NCH further explains that "the First Subpoena compelled testimony remotely under Rule 45 of the Federal Rules of Civil Procedure" and that "the Second Subpoena similarly contemplates remote testimony, but also authorizes in person testimony on Momar's behalf." *Id.* at 15.

According to NCH, "[t]he First Subpoena and the Second Subpoena are substantially similar, with the two differences being that: (1) in the Second Subpoena, NCH narrowed the document request in accordance with the Arbitrator's verbal order in the May 20, 2022 hearing; and (2) in the Second Subpoena, Momar's compliance may be in person, by remote testimony or any other means as agreed by

the parties," and "[b]oth Subpoenas require the testimony of a Momar, along with a single duces tecum request." *Id.* at 12-13.

Through its Application, "NCH seeks to recover its attorneys' fees for Momar's violation of the First Subpoena, and to compel Momar to comply with the Second Subpoena." *Id.* at 3.

### Legal Standards and Analysis

Under 9 U.S.C. § 7,

> [t]he arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

Section 7 "incorporates by reference Federal Rule of Civil Procedure 45(b)(2), which governs the service and enforcement of subpoenas to appear before the federal courts." *Broumand v. Joseph*, 522 F. Supp. 3d 8, 17 (S.D.N.Y. 2021). And "Federal Rule of Civil Procedure 45(c), which governs the enforcement of subpoenas in federal court, states that '[a] subpoena may command a person to attend a trial,

hearing, or deposition only,' as relevant here, 'within 100 miles of where the person resides, is employed, or regularly transacts business in person.' [FED. R. CIV. P. 45(c)(1)(A).] In addition, Rule 45(d)(3)(A)(ii) states that the district court where compliance is required 'must quash or modify a subpoena that ... requires a person to comply beyond the geographical limits specified in Rule 45(c).' [FED. R. CIV. P. 45(d)(3)(A)(ii).] Thus, the 100-mile limitation, which was enforced in the pre-2013 Rule 45 through a limit on service, was carried over to the post-2013 Rule 45 through a limit on enforcement." *Broumand*, 522 F. Supp. 3d at 21-22.

And, where Section 7 authorizes the federal district court in the district where the arbitrator is sitting to "punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States," 9 U.S.C. § 7, Rule 45(g) provides that "[t]he court for the district where compliance is required … may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it," FED. R. CIV. P. 45(g).

But, as a preliminary matter, as NCH's Application acknowledges, this Court must have subject-matter over this action, *see Aetna Health Mgmt., LLC v. Benchmark Health Network, LLC*, No. 3:20-cv-443-X, 2020 WL 980250, at *1 (N.D. Tex. Feb. 28, 2020), and must have personal jurisdiction over Momar, as a non-party to the arbitration, *see <u>Broumand</u>*, 522 F. Supp. 3d at 21-22, before it can

compel Momar to comply with any arbitration subpoena or subject it to civil contempt under Section 7.

And so the undersigned turns to those matters first, as the Court must. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 231-32 (5th Cir. 2012).

## I.    Subject Matter Jurisdiction

NCH asserts that "[t]his Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332" and that, "[s]pecifically, there is diversity because NCH is organized under Delaware law with its principal place of business in Texas, and Momar is organized under Georgia law with its principal place of business in Georgia," and "the amount in dispute exceeds $75,000 because the testimony and documents at issue in the First Subpoena and the Second Subpoena have a value in excess of $75,000." Dkt. No. 1 at 8.

As another judge in this district has explained in this context, "the [Federal Arbitration Act] is not an independent grant of federal jurisdiction," and "Section 7 does not bestow subject matter jurisdiction" – and, "[t]o properly allege diversity jurisdiction under § 1332, the parties need to allege complete diversity," "[a]nd the amount in controversy must exceed the sum or value of $75,000." *Aetna*, 2020 WL 980250, at *1, *2 (cleaned up). "Complete diversity requires that all persons on one side of the controversy [must] be citizens of different states than all persons on the other side," and "[t]he party seeking to invoke federal jurisdiction bears the burden

of establishing that the parties are completely diverse," for which purposes "citizenship must be distinctly and affirmatively alleged." *Id.* (cleaned up).

The Court should follow the decisions of other judges in this district by looking to NCH (as the party seeking to enforce the arbitration subpoenas) and Momar (as the non-party target of the subpoenas) as the relevant entities for assessing complete diversity. *See In re Jet HomeLoans Ventures, LLC*, No. 3:21-cv-2214-D, 2021 WL 5908901, at *3 n.3 (N.D. Tex. Dec. 14, 2021) ("In any event, for purposes of determining whether the parties are completely diverse, the court aligns Jet as the plaintiff and PrimeLending as a defendant."); *Aetna*, 2020 WL 980250, at *3.

And "[t]here is a split among courts over whether, in a case involving a subpoena, the money at issue in the underlying arbitration is relevant." *Jet HomeLoans Ventures*, 2021 WL 5908901, at *5. But NCH assumes that it is the value of the testimony and documents at issue in the First Subpoena and the Second Subpoena that count for these purposes, and the Court should accept that approach for purposes of this Application. *Accord Aetna*, 2020 WL 980250, at *3 ("To establish subject matter jurisdiction, Aetna must demonstrate why its claims against Benchmark, if any, meet or exceed the amount-in-controversy requirement.").

Under this framework, NCH has properly alleged complete diversity between itself and Momar. *See* Dkt. No. 1 at 4, 8. And NCH has sufficiently alleged facts to support its allegation that the value of information and testimony sought by the

subpoenas is in excess of $75,000 for the purposes of diversity jurisdiction. *See id.* at 13-14. NCH explains that "Momar's sales to NCH's customers through Phillips between April 8, 2021 and September 16, 2021 were approximately $341,406.85"; that "NCH knows this because Phillips produced Momar invoices identifying these sales, and Momar supplemented that production informally prior to the First Subpoena"; that "[t]hose same invoices would have been responsive to the First Subpoena, and are responsive to the Second Subpoena, as would the post-Temporary Injunction sale invoices that Momar refused to produce"; and that, "[t]hus, while neither Momar nor Phillips produced sales information for sales after the Temporary Injunction, the invoices prior to the date of the Temporary Injunction alone would have been responsive to the First Subpoena and the Second Subpoena and are known to exceed $75,000." *Id.* at 13.

## II.  Personal Jurisdiction, Service of Subpoenas, and Venue

Taking matters a bit out of order, NCH also persuasively explains how venue in proper in this district:

> Venue is proper in this Court pursuant to 28 U.S.C §1391(b)(2), and alternatively under 28 U.S.C §1391(b)(3), because a substantial part of the events or omissions giving rise to the claim occurred in this Court's judicial district. Specifically, the Arbitration is pending in this Court's judicial district, the First Subpoena and the Second Subpoena were issued in this Court's judicial district, and the Arbitration hearing, which Momar attended, compelling Momar's compliance with the First Subpoena was held in this Court's judicial district. …. Finally, venue is proper pursuant to Section 7 of the FAA which states that a party to an arbitration governed by the FAA may enforce a subpoena issued by the arbitrator "upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons

before said arbitrator or arbitrators." Because the Arbitrator is located in Dallas County, venue is proper in this Court under Section 7 of the FAA.

Dkt. No. 1 at 8-9.

And, as noted above, NCH explains that "Momar's counsel, [John] Moye, accepted service of the First Subpoena." Dkt. No. 1 at 11.

But NCH has provided no explanation of whether the Second Subpoena has been served on Momar, noting instead that "NCH submitted, and the Arbitrator signed [on July 6, 2022], a second subpoena for Momar's testimony and the production of documents at the rescheduled final hearing (the 'Second Subpoena')." Dkt. No. 1 at 3; *see also* Dkt. No. 1-2; Dkt. No. 5 at 4 of 6.

Whether analyzed under a personal jurisdiction analysis or otherwise, without proper service of process of the Second Subpoena – as to which NCH has not made even a prima facie case – the Court lacks a basis to order Momar to comply with its requirements under Section 7. *See generally Broumand*, 522 F. Supp. 3d at 14-15; *see also* 9 U.S.C. § 7 (requiring that arbitration summons or subpoenas "shall be served in the same manner as subpoenas to appear and testify before the court; [and that,] if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for

-9-

neglect or refusal to attend in the courts of the United States."); *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (explaining that "a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." (quoting FED. R. CIV. P. 4(k)(1)(A)); *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

As to the First Subpoena, the Court should find that, as NCH argues, "[s]eparate and apart from a state's long-arm statute, a federal court can[, under Federal Rule of Civil Procedure 4(k)(1)(C),] exercise personal jurisdiction over a party where a federal statute so permits"; that "Section 7 of the FAA provides that an arbitral summons 'shall be served in the same manner as subpoenas to appear and testify before the court'"; that, as other "[c]ourts have interpreted this provision," Section 7 "incorporate[s] Rule 45's nationwide service of process authority after the 2013 amendments to the Federal Rules of Civil Procedure"; and, "[t]hus, when considering a federal law authorizing nationwide service of process, the operative consideration for whether the court has personal jurisdiction over a non-resident is whether the non-resident has sufficient contacts with the United States as a whole, not forum state." Dkt. No. 1 at 6 (cleaned up; citing *Broumand*, 522 F. Supp. 3d at 19-20); *see also* FED. R. CIV. P. 4(k)(1) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who

is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located; (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or (C) when authorized by a federal statute.").

Even with a statutory basis for personal jurisdiction, the Court may exercise personal jurisdiction over a nonresident defendant only if the exercise of jurisdiction by the forum is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).

But, as another court has persuasively explained, "in a proceeding to enforce an arbitral subpoena pursuant to Section 7 of the FAA, the relevant contacts for determining personal jurisdiction are contacts with anywhere in the United States, even where, as here, the case arises not under federal question but diversity jurisdiction." *Broumand*, 522 F. Supp. 3d at 20; *accord Busch v. Buchman, Buchman & O'Brien, L. Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) ("And, when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States. …. Here, the due process concerns of the Fifth Amendment are satisfied. Given that the relevant sovereign is the United States, it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States.").

And, so, as NCH asserts, as to the First Subpoena, "under the 'national contacts' approach, this Court has personal jurisdiction over Momar," which "is a Georgia company selling products in the United States and thus has sufficient contacts with the United States to support personal jurisdiction." Dkt. No. 1 at 8 (footnoted omitted). And "it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over" Momar in this action. *Busch*, 11 F.3d at 1258; *accord Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 264 (5th Cir. 2019) ("And residents of the United States – which Defendants undisputedly are – have enough contact with the United States that haling them into federal court does not offend traditional notions of fair play and substantial justice.'" (quoting *Busch*, 11 F.3d at 1258)).

## III.   Compliance with 9 U.S.C. § 7 and Federal Rule of Civil Procedure 45

But, even if there were proper service of process on – and (with or without proper service of the Second Subpoena) personal jurisdiction over – Momar as to both of the arbitration subpoenas, the Court should deny the Application because neither the First Subpoena nor the Second Subpoena is enforceable under Section 7.

The First Subpoena sought to compel, and the Second Subpoena seeks to compel, testimony remotely by a representative of a Georgia corporation with its principal place of business in Atlanta, Georgia.

Even assuming that directing Momar to provide remote testimony satisfies Rule 45(c)'s 100-mile limitation, *see In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 16-17039, 2021 WL 6202422, at *3 (E.D. La. July 26, 2021) ("Accordingly, this Court

joins another section of this Court and at least two additional courts within the Fifth Circuit in holding that, for good cause and compelling circumstances and with the appropriate safeguards, Rule 45 is satisfied so long as the witness is not compelled to testify at a location beyond 100 miles from the witness's residence." (footnote omitted; citing *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, No. 3:11-md-2244-K, 2016 WL 9776572, at *1-*2 (N.D. Tex. Sept. 20, 2016)), the First Subpoena's and Second Subpoena's remote-testimony requirements fail to comply with the "presence requirement" in Section 7's provision authorizing arbitrators to "summon in writing any person to attend before [the arbitrators] or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case," 9 U.S.C. § 7.

As another court has persuasively reasoned and explained in resolving similar Section 7 petitions to compel compliance with arbitration subpoenas, "[e]ven if Rule 45(c)'s geographical limitations did not invalidate these arbitral subpoenas, Section 7's presence requirement would." *Broumand*, 522 F. Supp. 3d at 24. Electing to follow a "judicial consensus" reflected in a recent decision of the United States Court of Appeals for the Eleventh Circuit, among others, the court in *Broumand* noted the Eleventh Circuit panel's holding that "Section 7's presence requirement does not authorize district courts to enforce an arbitral summons for a witness to appear via video conference," where "[l]ooking to dictionaries from the time of Section 7's enactment around 1925, the Eleventh Circuit explained that a court order

compelling the 'attendance' of a witness 'before' the arbitrator meant compelling the witness to be in the physical presence of the arbitrator." *Id.* at 25 (quoting *Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1160 (11th Cir. 2019) (per curiam)). The Eleventh Circuit concluded, in so holding, that "Section 7 does not authorize district courts to compel witnesses to appear in locations outside the physical presence of the arbitrator, so the court may not enforce an arbitral summons for a witness to appear via video conference." *Managed Care*, 939 F.3d at 1160.

The *Broumand* court also explained that, "[h]owever valid petitioner's policy concerns [regarding the current pandemic] may arguably be, they cannot trump the plain meaning of Section 7 of the FAA" and that "allowing video testimony would undermine the purpose of the presence requirement," where "[t]he principle … is to force an arbitrator to think twice before issuing an arbitral subpoena" and "[a]llowing arbitrators to subpoena nonparties for discovery without requiring the arbitrators to convene and preside over a physical hearing would largely undermine that calculation." *Broumand*, 522 F. Supp. 3d at 25.

And the *Broumand* court further noted the Eleventh Circuit *Managed Care* panel's reasoning "that electronically providing the necessary documents to the arbitrator and attorneys prior to the hearing constitutes pre-hearing discovery that is not authorized by the FAA" and "conclude[d] that the arbitral subpoenas [in *Broumand*], as modified to require video testimony, are unenforceable because they seek to compel respondents to produce documents without also requiring

respondents to testify in-person at an evidentiary hearing." *Broumand*, 522 F. Supp. 3d at 25 (cleaned up); *accord Managed Care*, 939 F.3d at 1161 ("Accordingly, the provision of documents prior to the hearing is not the same as appearing in the physical presence of an arbitrator and bringing documents at the time of the hearing. As a result, this requirement is not enforceable.").

Adopting these decisions' analysis and reasoning, the Court should determine that the First Subpoena and the Second Subpoena are not enforceable under Section 7 insofar as they require Momar to provide corporate representative testimony by remote means and include an accompanying command to produce documents. *See Managed Care*, 939 F.3d at 1161 ("Accordingly, we interpret the plain meaning of Section 7 as (1) requiring summonsed non-parties to appear in the physical presence of the arbitrator as opposed to a video conference or teleconference; and (2) prohibiting pre-hearing discovery. The district court abused its discretion in enforcing the arbitral summonses because the court lacked power under Section 7 to order the witnesses to appear at the video conference and provide pre-hearing discovery.").

This is consistent with prior decisions of other judges in this circuit, including another judge in this district. *See Chicago Bridge & Iron Co. N.V. v. TRC Acquisition, LLC*, No. Civ. A. 14-1191, 2014 WL 3796395, at *3 (E.D. La. July 29, 2014) ("This Court agrees with the Second, Third, and Fourth Circuits that Section 7 provides only for the issuance and enforcement of a subpoena duces tecum against non-parties who are compelled to testify as witnesses before the arbitrator, not for a

subpoena seeking merely the production of documents by a non-party who is not summoned to testify as a witness before the arbitrator. …. The rationale of *Hay Group* and *Life Receivables* turns on the fact that Section 7 unambiguously restricts an arbitrator's subpoena power to situations in which the non-party has been called to appear in the physical presence of the arbitrator and to hand over the documents at that time." (cleaned up; citing *Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 214-17 (2nd Cir. 2008); *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 407 (3d Cir. 2004); *COMSAT Corp. v. National Science Foundation*, 190 F.3d 269, 274-76 (4th Cir. 1999)); *Empire Fin. Grp., Inc. v. Penson Fin. Servs., Inc.*, No. 3:09-cv-2155-D, 2010 WL 742579, at *3 (N.D. Tex. Mar. 3, 2010) ("The court adopts the reasoning of the Third and Second Circuits and holds that § 7 of the FAA does not authorize arbitrators to compel production of documents from a non-party, unless they are doing so in connection with the non-party's attendance at an arbitration hearing. As the Third Circuit reasoned, the text of § 7 mentions only orders to produce documents when brought with a witness to a hearing. …. Although FINRA's actions may be relevant to the arbitration, under the authority of § 7, a court cannot compel the pre-hearing production of documents from a non-party to an arbitration proceeding unless the non-party has been subpoenaed to be a witness and bring documents to an arbitration hearing.").

And the Second Subpoena's alternatively authorizing in-person testimony on Momar's behalf does not render it enforceable under Section 7 and Rule 45(c). While directing Momar's representative to appear in person in Dallas to testify in person at

the hearing would satisfy Section 7's presence requirement, "Rule 45(c)'s geographic limits apply to arbitral subpoenas," as incorporated by Section 7, *Broumand*, 522 F. Supp. 3d at 14 n.1, 22. And NCH has not adequately alleged that requiring testimony in Dallas by a representative of a Georgia corporation with its principal place of business in Atlanta can satisfy Rule 45(c)'s requirement that "[a] subpoena may command a person to attend a trial, hearing, or deposition only ... within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A).

NCH's Application recognizes this requirement but asserts only that, "upon information and belief, Momar regularly transacts business in person within 100 miles of the place where compliance would be required (NCH's counsel's office in Dallas County), and thus, in addition to remote testimony being proper under Rule 45, in person compliance by Momar is also proper under Rule 45." Dkt. No. 1 at 15-16; *see also id.* at 6 ("Momar is a nationwide company with hundreds of employees. Momar is registered to do business in the state of Texas, and its registered agent is in this court's judicial district. Momar employs multiple individuals who live and work in the state of Texas, and whose job is to market and sell Momar products to Texas residents.").

Without any additional factual or evidentiary support for these assertions, NCH has not established that the Second Subpoena is enforceable under Section 7.

### Recommendation

For the reasons explained above, the Court should deny the Application to

-17-

Enforce Arbitration Subpoenas [Dkt. No. 1] filed by Certified Laboratories, a division of NCH Corporation.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 16, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE