IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CERTIFIED LABORATORIES, a division of NCH CORPORATION, | § | |
| Plaintiff, | § | |
| v. | § | No. 3:22-mc-60-K-BN |
| MOMAR, INC., | § | |
| Defendant. | § | |

**APPENDIX IN SUPPORT OF MOMAR, INC.'S OBJECTION TO FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE**

Defendant Momar, Inc. ("Momar"), by and through undersigned counsel and pursuant to Local Rule 72.2(4), hereby submits this Appendix in support of its Objection to the Findings, Conclusions, and Recommendations of the United States Magistrate Judge, as follows:

| **Exhibit** | **Description**[1] | **Appendix Page Nos.** |
|---|---|---|
| **A** | Declaration of Julian B. Mohr | D-APPX-0001 – 0002 |
| **B** | Declaration of Matthew Phillips | D-APPX-0003 – 0004 |
| **C** | Declaration of John M. Moye | D-APPX-0005 – 0006 |
| **D** | Subpoena to Momar, Inc., dated March 25, 2022 | D-APPX-0007 – 0015 |
| **E** | E-mail from John Moye, dated March 31, 2022 | D-APPX-0016 – 0017 |
| **F** | E-mail from John Moye, dated April 12, 2022 | D-APPX-0018 – 0020 |
| **G** | E-mail from John Moye, dated May 9, 2022 | D-APPX-0021 – 0026 |
| **H** | Excerpts from Deposition of Matthew Phillips, taken January 5, 2022 | D-APPX-0027 – 0029 |
| **I** | E-mail from Dave Wishnew, dated May 9, 2022 | D-APPX-0030 – 0036 |
| **J** | E-mail from John Moye, dated May 11, 2022 | D-APPX-0037 – 0044 |
| **K** | E-mail from Dave Wishnew, dated May 11, 2022 | D-APPX-0045 – 0053 |

[1] Exhibits D and F through K have been redacted to conceal identification of confidential customer information.

Respectfully submitted this the 2nd of September, 2022.

/s/ Benjamin T. Pendroff
Benjamin T. Pendroff
State Bar No. 24094893
bpendroff@btlaw.com
BARNES & THORNBURG LLP
2121 N. Pearl St., Suite 700
Dallas, Texas 75201
Tel.: (214) 258-4200
Fax: (214) 258-4199

***Attorney for Defendant Momar, Inc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on September 2, 2022, the foregoing document was filed electronically in compliance with the Federal Rules of Civil Procedure and all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/ Benjamin T. Pendroff
Benjamin T. Pendroff

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CERTIFIED LABORATORIES, a division of NCH CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:22-mc-60-K-BN |
| | § | |
| MOMAR, INC., | § | |
| | § | |
| Defendant. | § | |

**DECLARATION OF JULIAN B. MOHR, JR.**

I, Julian B. Mohr, Jr., pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of 18 and am otherwise competent to testify as to the matters set forth in this Declaration.

2. The facts in this Declaration are stated based upon my personal knowledge.

3. I am currently the Chief Executive Officer of Momar, Inc. ("Momar"), which is headquartered in Atlanta, Georgia.

4. Momar hired Matt Phillips as a sales representative in April 2021. Mr. Phillips was previously employed by Certified Laboratories, a division of NCH Corporation ("NCH").

5. On or around September 17, 2021, I was provided with a copy of an "Order Granting Temporary Injunction" that was entered in a pending arbitration between Mr. Phillips and NCH (the "Injunction").

6. Since the Injunction issued on or around September 16, 2021, Momar has taken diligent steps to ensure that Mr. Phillips abides by it.

7. Specifically, since the date of the Injunction, Mr. Phillips has repeatedly been instructed not to solicit or sell Momar products to his former NCH customers in a manner that would violate the Injunction.

8. In addition, since the date of the Injunction, Momar has put in place various internal mechanisms and protections to prevent Phillips from making sales of Momar products to any of his former NCH customers in manner that would violate the Injunction.

9. I declare under penalty of perjury that the forgoing is true and correct.

This the 1st day of September, 2022.

Julian B. Mohr, Jr.

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CERTIFIED LABORATORIES, a division of NCH CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:22-mc-60-K-BN |
| | § | |
| MOMAR, INC., | § | |
| | § | |
| Defendant. | § | |

**DECLARATION OF MATTHEW PHILLIPS**

I, Matt Phillips, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of 18 and am otherwise competent to testify as to the matters set forth in this Declaration.

2. The facts in this Declaration are stated based upon my personal knowledge.

3. I am currently employed by Momar, Inc. ("Momar"). Prior to my resignation in April 2021, I was employed by Certified Laboratories, a division of NCH Corporation ("NCH").

4. I am presently a party in a pending arbitration dispute with NCH.

5. On or around September 16, 2021, the arbitrator in the pending arbitration issued an Order Granting Temporary Injunction (the "Injunction"), a true and correct copy of which is attached as Exhibit A to this Declaration.

6. Among other things, the Injunction prohibits me from selling Momar products, or soliciting the sale of Momar products, to NCH customers that I serviced, handled, or was responsible for during my prior employment with NCH.

7. Since the Injunction issued on or around September 16, 2021, I have consistently taken steps to abide by it, and Momar has made clear to me that I am bound to do so as a condition of my employment.

8. I declare under penalty of perjury that the forgoing is true and correct.

This the 2 day of SEPTEMBER, 2022.

Matthew Phillips

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CERTIFIED LABORATORIES, a division of NCH CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:22-mc-60-K-BN |
| | § | |
| MOMAR, INC., | § | |
| | § | |
| Defendant. | § | |

**DECLARATION OF JOHN M. MOYE**

I, John M. Moye, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of 18 and am otherwise competent to testify as to the matters set forth in this Declaration.

2. The facts in this Declaration are stated based upon my personal knowledge.

3. I am currently engaged as counsel for Momar, Inc. ("Momar"). I am based in Atlanta, Georgia, where Momar is headquartered.

4. Beginning in late 2021, I was contacted by counsel for NCH Corporation, David Wishnew, about the pending arbitration proceedings between NCH and its former employee Matthew Phillips.

5. Between this period and the first half of 2022, Mr. Wishnew corresponded with me regarding NCH's request that Momar provide records reflecting sales that Mr. Phillips made to an identified list of customers after joining Momar in April 2021.

6. Although Momar was not a party to the arbitration, I worked in good faith to gather the requested materials and to provide them to Mr. Wishnew as a courtesy.

7. At no time during these interactions did I indicate that Momar would consent to the jurisdiction of the arbitration—nor would I have done so, given that Momar is an out-of-state non-party that never agreed to arbitrate any claims or disputes in Texas.

8. Contrary to NCH's recent representations to the Court, I did not consent to the jurisdiction of the underlying arbitration by serving objections to NCH's overbroad subpoenas in the spring of 2022.

9. In fact, in submitting Momar's objections to the subpoenas, I wrote to Arbitrator Hackney that Momar's objections were made "without consenting to jurisdiction and expressly reserving all rights and objections it may have on that issue."

10. I declare under penalty of perjury that the forgoing is true and correct.

This the 1st day of September, 2022.

John M. Moye

# JAMS Arbitration

for the

Northern District of Texas

Certified Laboratories, a division of NCH Corporation )
*Claimant* )
v. ) JAMS Action No. 1310025855
Matthew S. Phillips )
*Respondent* )

## SUBPOENA TO APPEAR AND TESTIFY AT A HEARING OR TRIAL IN AN ARBITRATION ACTION

To: Corporate Representative(s) for Momar Inc., 1830 Ellsworth Industrial Drive, Atlanta, Georgia 30318, c/o John Moye, Barnes & Thornburg LLP 3475 Piedmont Road N.E., Suite 1700, Atlanta, Georgia 30305 (404) 264-4006

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to appear at the JAMS Office at the time, date, and place set forth below to testify at a hearing or trial in this arbitration action. When you arrive, you must remain at the arbitration until the arbitrator allows you to leave.

| | |
|---|---|
| Place: JAMS Dallas Office (by video conference)<br>8401 N Central Expressway #610<br>Dallas, Texas 75225 | Courtroom No.: N/A<br>Date and Time: 04/19/2022 9:00 am |

You must also bring with you the following documents, electronically stored information, or objects *(leave blank if not applicable)*:
See Attachment A hereto.

The following provisions of Fed. R. Civ. P. 45 (applicable to this arbitration under the JAMS Employment Rules & Procedures) are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 03/25/2022

*Arbitrator's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Certified Laboratories, a division of NCH, who issues or requests this subpoena, are:

Dave Wishnew, 1700 Pacific Ave. Suite 2390 Dallas, TX 75201 (214) 817-4500

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 1310025855

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ______________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________________
______________________________________________________________________
______________________________________ on *(date)* ______________ ; or

❒ I returned the subpoena unexecuted because: ______________________________
______________________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ______________ .

My fees are $ __________ for travel and $ __________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Attachment A

## INSTRUCTIONS

1. None of the following requests are to be interpreted to request information protected by the attorney-client privilege.

2. Momar is required to respond to the Subpoena and to produce the documents designated hereafter for inspection and copying within the time prescribed by the Federal Rules of Civil Procedure to counsel for Claimant, David F. Wishnew, Mark T.J. Jones, and Sydney P. Sadler, Crawford, Wishnew & Lang PLLC, 1700 Pacific Avenue, Suite 2390, Dallas, Texas 75201.

3. In responding to the Subpoena, Momar must provide all information and produce all documents which are in its possession, custody, or control, including documents in the possession, custody, or control of its attorneys, investigators, agents, representatives, or any other person or entity acting on its behalf.

4. If Momar contends that it may partially or entirely withhold a requested document because of a rule, privilege, immunity, or other reason, for each document partially or entirely withheld, provide the following information:

a. the name of each author, writer, sender, or initiator of such document, if any;
b. the name of each person to whom any part of the contents of the documents has been communicated;
c. the date of such document, if any; and
d. the claimed grounds for limitations of discovery (*e.g*., "attorney-client privilege").

5. The requests within the Subpoena are deemed to be continuing, and Momar is required to modify or supplement its responses if additional responsive documents are subsequently obtained or identified.

## DEFINITIONS

Except where the context indicates to the contrary, the following definitions shall apply to these Requests.

1. The term "***You***" , "***Your***" and "***Momar***" refers to Momar, Inc. and shall include any of its present or former agents, partners, predecessors, successors, assigns, legal representative, non-legal representatives, personal representatives, attorneys, employees, subsidiaries and parent companies, sister companies, affiliated entities, divisions, and also includes individual and entities who act, have acted, purport to act, or have purported to act on its behalf.

2. The term "***Phillips***" refers to Respondent Matthew S. Phillips and shall include any of his agents and anyone acting or purporting to act on his behalf.

3. The tern "***NCH***" or "***Claimant***" refers to Certified Laboratories, a division of NCH Corporation and shall include any of its present or former agents, partners, predecessors,

successors, assigns, legal representative, non-legal representatives, personal representatives, attorneys, employees, subsidiaries and parent companies, sister companies, affiliated entities, divisions, and also includes individual and entities who act, have acted, purport to act, or have purported to act on its behalf.

4. The term "***Confidential Information***" is defined as it is in the Order Granting Temporary Injunction. "Confidential Information" includes, without limitations, NCH's customer lists, assigned accounts, potential leads, customer history, customer buying preferences and purchasing habits, customer pricing and pricing variations, sales manuals, product technical specifications, completed daily analysis sheets or other customer solicitation records or reports, supplier lists and pricing, business plans, and all other confidential or proprietary information relating to NCH's business that NCH shared with Phillips during his employment with NCH. For clarification, not limitation, Confidential Information includes but is not limited to: (1) NCH's Tech Sheets; and (2) information related to the design, manufacturing and implementation of the Solar Direct Inject pumps manufactured by Burns Controls Company for NCH.

5. The term "***Customer***" refers to any business that was an NCH customer during Phillips' employment with NCH. "Customer" shall include the business's present or former agents, partners, predecessors, successors, assigns, legal representative, non-legal representatives, personal representatives, attorneys, employees, subsidiaries and parent companies, sister companies, affiliated entities, divisions, and also includes individual and entities who act, have acted, purport to act, or have purported to act on its behalf.

6. The term "***document***" means any written, printed, typewritten, handwritten, graphic or electronic matters, drafts, originals, copies, nonconforming copies which contain deletions, insertions, handwritten notes or comments, however produced or reproduced, and to any other means of retention of information or otherwise recorded matter of whatever character, including, but without limitation to, all letters, correspondence, e-mail, text messages, records of conferences, memoranda, telegrams, stenographic or handwritten notes, interoffice or interdepartmental communications (whether formal or informal), summaries, telephone logs and records, teletypes, bank checks, bank deposits and withdrawal slips, bank credit and debit memoranda, bank drafts, bank statements, telexes, private wire messages, communications, desk calendars, diaries, appointment books, agenda, meetings, recorded conversations, schedules, reports, studies, appraisals, analysis lists, surveys, budgets, financial statements, financial projections, financial calculations, contracts, agreements or proposed agreements, notice of wire transfer of funds or other notices, canceled checks, periodicals, charts, graphs, interviews, speeches, transcripts, depositions, press releases, brochures, books of account, affidavits, invoices, audit committees, working reports, newspaper or magazine articles, releases, receipts, electronic data, automated data, computer data, maps, tax returns, vouchers, microfilm, video tapes, photographs, phone records, tape recordings, wire recordings, diagrams, computer tapes, projections, microfiche and other data computations and paper similar to any of the foregoing and other writings of every kind and description (whether or not actually used) and other data computations from which information can be obtained.

7. The term "***communication***" shall mean and include, without limitation of its generality, statements, memoranda, electronic mail messages discussions, text messages,

conversations, speeches, meetings, remarks, questions, answers, panel discussions and symposia, whether written or oral. The term includes, without limitation of its generality, both communications and statements which are face-to-face and those which are transmitted by media such as intercoms, telephones television or radio.

8. The terms "***evidencing***," "***concerning***," "***referring to***," "***relating to***," or "***reflecting***" any given subject when used to specify a document, communication, or statement, shall mean any document, communication, or statement that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any manner whatsoever pertinent to that subject.

9. The words "***identify***" or "***identification***," when used with respect to a natural person(s), shall mean to state: the name, address(es) and telephone number(s) of each such person; the name of the present employer(s) and place of employment of each such person; and the job title or position presently held by each such person. If any of the foregoing information is not available, state any other available means of identifying such person.

10. The words "***identify***" or "***identification***," when used in reference to a business entity (e.g., corporation, partnership, joint venture, sole proprietorship), shall mean to state (a) its full name or title; (b) its present or last known business address; (c) its present or last known mailing address; (d) its directors, officers, and shareholders, as well as its owners and/or other principals; and (e) the nature of the organization, including its state of formation or incorporation.

11. The words "***identify***" or "***identification***," when used in reference to a document, shall mean to state: its date; its author; its addressee; the type of document (e.g., letter, memorandum, receipt, invoice, schedule, report, telegram, chart, photograph, salary production, etc.); and its present location and identity of its custodian. If any document was, but is no longer, in Your possession or control, or in existence, explain why. If any of the foregoing information is not available, state any other available means of identifying such document. If a document is one of a series of pages contained in a book, pamphlet, binder, folder, microfilm (or other storage device), include in your identification of such document(s) any available numerical reference (or other aid) to the pages and lines or other portion thereof at which the information referred to can be found. A true and correct copy of any document may be produced and filed with your Answers hereto in lieu of the above information.

12. The words "***identify***" or "***identification***," when used with respect to a conversation, communication, conference, or meeting, shall mean to state (a) the date and time thereof; (b) the location thereof; (c) the identity of all persons participating or attending; (d) the identity of all documents referring or relating to said conversation, conference or meeting, in accordance with the definition above; (e) the method of communication utilized (e.g., telephone, in person communication, or other means) or if the method of communication was by telephone, specify the caller and the person called; and (f) a verbatim or as close as possible to verbatim account of who said what to whom.

13. "***Person***" means natural person(s), private or public corporation(s), general partnership(s), limited partnership(s), sole proprietorship(s), union(s), association(s),

federation(s), government agency(ies), or any other kind of entity or organization.

14. "***Statement***" means any communication or utterance, whether oral or written, made by one person to another or in the presence of another, or any document delivered or sent from one person to another.

15. Whenever a noun appears, it shall be construed either to be singular or plural, masculine or feminine, to bring within the scope of these discovery requests any information that may otherwise be construed to be outside their scope.

16. The terms "***and***" and "***or***" shall be construed both conjunctively and distinctively, and each shall include the other, wherever such dual construction will serve to bring within the scope of these Requests, information which would otherwise not be brought within their scope.

17. **Relevant Time Period**. Unless specified otherwise in a particular Request, the relevant time period for these requests is January 1, 2021 to the present.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Documents sufficient to identify: (i) the number of sales made by Phillips during his employment with You to NCH's Customers, as well as the identity of such Customers, from April 8, 2021 to present; (ii) the revenue, itemized by Customer, generated from such sales; (iii) the product or product category for each sale; and (iv) Phillips' commission and/or compensation related to such sales. For the purposes of this Request, the term "identify" shall include, but is not limited to, the information referenced in (i)-(iv) herein for the following Customers:

| No. | Customer |
|---|---|
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |
| [redacted] | [redacted] |

[redacted]

**<u>REQUEST FOR PRODUCTION NO. 2:</u>** Documents sufficient to identify the manner by which Phillips is compensated as an employee of Momar. For the purposes of this Request, the term "identify" shall include, but is not limited to, the amount paid to Phillips in salary, bonuses, commissions and contingency payments. For clarification, not limitation, if Phillips is paid by Momar based on sales to customers, this Request is to include documents sufficient to identify such customers and the amount paid to Phillips resulting from such sales.

EXHIBIT E

**From:** Moye, John
**Sent:** Thursday, March 31, 2022 5:32 PM
**To:** T.J. Jones
**Cc:** Dave Wishnew; Moye, John
**Subject:** 3-25-22 Proposed Subpoenas to Momar, Inc.

Dear T.J.:

I have received and reviewed your e-mail of March 25 concerning the subpoenas you are preparing to serve upon Momar in the Matt Phillips arbitration. You asked that I review those subpoenas as part of the meet and confer process and let you know if I had any issues with them.

The subpoenas you have propounded, less than a month before the hearing, seek documents and information that are almost wholly duplicative of information already obtained in discovery in the underlying case—and, moreover, the requests are unduly burdensome on Momar as a non-party to this arbitration.

As to the first subpoena, you request two categories of documents: i) documents reflecting sales made by Matt Phillips to a list of 59 customers, including revenue received from such sales and the products sold; and ii) "documents sufficient to identify the manner in which Phillips is compensated as a Momar employee." Yet NCH is already in possession of virtually all this information—which it has received in the normal course of fact discovery in the underlying Phillips case.

Indeed, as to category #1, Phillips has already produced in discovery a substantial number of invoices reflecting sales to NCH's customers since joining Momar. Those invoices reflect sales to 41 of the 59 customers listed in the subpoena, and they further list the products Phillips sold and the revenues received from such sales. (As noted below, Phillips did not receive commissions on any of those sales.) Another 11 customers on your list are customers to whom Phillips has never made a sale.

Thus, of the 59 customers listed in the document subpoena, 52 of those customers are ones for whom NCH already has the pertinent documentation or ones for which there is no responsive information. We fail to understand why Momar, as a non-party, should be burdened with the exercise of re-producing to NCH the materials that it has already obtained through fact discovery in the Phillips case. In addition, any "follow up" on these customers or invoices should be directed to Phillips, who is a party to the arbitration and who produced these items in the first place.

As to category #2, Phillips has similarly already provided the information requested. Specifically, he has produced his employment agreement with Momar, which reflects his annual salary. He also testified about his compensation structure during his deposition- confirming his annual salary and testifying (accurately) that he has not received any bonuses or commissions beyond his salary since joining Momar. In other words, like the customer sales request, this request seeks information that is wholly duplicative of documents and information already received in the normal course of discovery.

Finally, to the extent NCH seeks to have an undisclosed "corporate representative" testify on the document categories listed in the subpoena, we believe it would be unduly burdensome to require such testimony, given the duplicative nature of the evidence (as captured in the documents), the fact that Phillips can speak directly to these issues, and the fact that Momar is a non-party to the arbitration.

As to the other deposition subpoena, Donna Ray retired from Momar earlier this year after more than three decades with the company. We do not believe Ms. Ray should be compelled to testify at the arbitration, given her current status. Setting aside the burden of having Ms. Ray appear at the April proceeding, we further believe whatever

information she would provide related to this dispute would either be duplicative (e.g. sales that have been made by Phillips) or would be beyond the scope of the arbitration (which is focused on Phillip's violation of his covenants by soliciting NCH's customers). And the relevance of her testimony is far outweighed by the burden of having Ms. Ray appear—as a retired, out-of-state employee of a non-party—particularly with less than a month's advanced notice.

In light of the above, please advise if you intend to move forward with these subpoenas. If you do, Momar intends to file objections to them with the arbitrator pursuant to JAMS Rule 21 on the grounds set forth above. I look forward to hearing from you.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

BARNES & THORNBURG LLP

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
B P t W
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

EXHIBIT F

**From:** Moye, John
**Sent:** Tuesday, April 12, 2022 10:17 AM
**To:** Dave Wishnew; T.J. Jones
**Cc:** BrandonJGilham@gmail.com; Moye, John
**Subject:** FW: 3-25-22 Proposed Subpoenas to Momar, Inc.
**Attachments:** [redacted]

Dave: I wanted to follow up on our conversation of last week and give you an update on your request for financial records related to 59 listed NCH customers to whom Phillips made sales.

As noted in my earlier correspondence, Matt Phillips has already produced invoices reflecting sales he made (including products sold and prices charged) to <u>41</u> of the customers listed in the subpoena.

I previously advised that the subpoena included **11** additional customers that Phillips has not sold to since joining Momar. These are as follows: [redacted]

On our call, I told you I would check with Momar as to the remaining customers listed in the subpoena and produce any supplemental invoices/sales records reflecting sales Phillips made to these customers. Having reviewed this matter with my client, we have identified <u>3</u> additional customers to whom Phillips made sales: [redacted] Those invoices are attached.

I am hopeful this provides you with the additional information that you need with respect to Phillips's sales activities.

If there are open questions about these customers, I am copying Brandon on this e-mail, so that follow-ups can be directed to him and Matt.

Let me know if you want to discuss. Thanks.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

BARNES & THORNBURG LLP

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
BPtW
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

**From:** Moye, John
**Sent:** Thursday, March 31, 2022 5:32 PM
**To:** 'T.J. Jones' <tjjones@cwl.law>
**Cc:** Dave Wishnew <dwishnew@cwl.law>; Moye, John <JMoye@btlaw.com>
**Subject:** 3-25-22 Proposed Subpoenas to Momar, Inc.

Dear T.J.:

I have received and reviewed your e-mail of March 25 concerning the subpoenas you are preparing to serve upon Momar in the Matt Phillips arbitration. You asked that I review those subpoenas as part of the meet and confer process and let you know if I had any issues with them.

The subpoenas you have propounded, less than a month before the hearing, seek documents and information that are almost wholly duplicative of information already obtained in discovery in the underlying case—and, moreover, the requests are unduly burdensome on Momar as a non-party to this arbitration.

As to the first subpoena, you request two categories of documents: i) documents reflecting sales made by Matt Phillips to a list of 59 customers, including revenue received from such sales and the products sold; and ii) "documents sufficient to identify the manner in which Phillips is compensated as a Momar employee." Yet NCH is already in possession of virtually all this information—which it has received in the normal course of fact discovery in the underlying Phillips case.

Indeed, as to category #1, Phillips has already produced in discovery a substantial number of invoices reflecting sales to NCH's customers since joining Momar. Those invoices reflect sales to 41 of the 59 customers listed in the subpoena, and they further list the products Phillips sold and the revenues received from such sales. (As noted below, Phillips did not receive commissions on any of those sales.) Another 11 customers on your list are customers to whom Phillips has never made a sale.

Thus, of the 59 customers listed in the document subpoena, <u>52</u> of those customers are ones for whom NCH already has the pertinent documentation or ones for which there is no responsive information. We fail to understand why Momar, as a non-party, should be burdened with the exercise of re-producing to NCH the materials that it has already obtained through fact discovery in the Phillips case. In addition, any "follow up" on these customers or invoices should be directed to Phillips, who is a party to the arbitration and who produced these items in the first place.

As to category #2, Phillips has similarly already provided the information requested. Specifically, he has produced his employment agreement with Momar, which reflects his annual salary. He also testified about his compensation structure during his deposition- confirming his annual salary and testifying (accurately) that he has not received any bonuses or commissions beyond his salary since joining Momar. In other words, like the customer sales request, this request seeks information that is wholly duplicative of documents and information already received in the normal course of discovery.

Finally, to the extent NCH seeks to have an undisclosed "corporate representative" testify on the document categories listed in the subpoena, we believe it would be unduly burdensome to require such testimony, given the duplicative nature of the evidence (as captured in the documents), the fact that Phillips can speak directly to these issues, and the fact that Momar is a non-party to the arbitration.

As to the other deposition subpoena, Donna Ray retired from Momar earlier this year after more than three decades with the company. We do not believe Ms. Ray should be compelled to testify at the arbitration, given her current status. Setting aside the burden of having Ms. Ray appear at the April proceeding, we further believe whatever information she would provide related to this dispute would either be duplicative (e.g. sales that have been made by Phillips) or would be beyond the scope of the arbitration (which is focused on Phillip's violation of his covenants by soliciting NCH's customers). And the relevance of her testimony is far outweighed by the burden of having Ms. Ray appear—as a retired, out-of-state employee of a non-party—particularly with less than a month's advanced notice.

In light of the above, please advise if you intend to move forward with these subpoenas. If you do, Momar intends to file objections to them with the arbitrator pursuant to JAMS Rule 21 on the grounds set forth above. I look forward to hearing from you.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

BARNES & THORNBURG LLP

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
BPtW
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

EXHIBIT G

**From:** Moye, John
**Sent:** Monday, May 9, 2022 3:40 PM
**To:** T.J. Jones; BrandonJGilham@gmail.com
**Cc:** Dave Wishnew; Moye, John
**Subject:** RE: 3-25-22 Proposed Subpoenas to Momar, Inc.
**Attachments:** [redacted]

T.J.:

We have reviewed the list of 57 customers below and have identified only one additional customer to whom Matt Phillips made sales for whom you do not have invoices: [redacted] Those invoices are attached.

Your list includes many duplicative customers that you had inquired about previously via your subpoena to Momar—including [redacted] Invoices for those customers have either already been provided, or, alternatively, have not been the subject of any sales with Matt Phillips (and thus you have no invoices for them).

To be clear, between Phillips's production, Momar's production in response to the subpoena, and this supplemental set of invoices, you should have invoices for all NCH customers that Phillips has sold to since joining Momar. If you are missing invoices, it is because they have not been the subject of any sales.

To the extent the settlement proposal you circulated in late April was predicated on a damages model that factored in sales to these additional 57 customers, please confirm that you will be revising your damages calculation accordingly to remove such lost sales.

Thanks.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

BARNES & THORNBURG LLP

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
B P t W
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

**From:** T.J. Jones <tjjones@cwl.law>
**Sent:** Thursday, April 28, 2022 1:47 PM
**To:** Moye, John <JMoye@btlaw.com>; BrandonJGilham@gmail.com

**Cc:** Dave Wishnew <dwishnew@cwl.law>
**Subject:** [EXTERNAL]RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

John & Brandon,

I wanted to follow up on our request for invoices related to customers Phillips serviced as an employee of NCH. We have several customers that we show as lost to Phillips after his departure from NCH, or that Phillips sold to during his employment, that we do not have corresponding Momar invoices for. Can you confirm that: (1) Momar does not have invoices to these clients since Phillips' departure from NCH; or (2) that invoices to such customers are unrelated to Phillips? (i.e. that Phillips did not have contact with the customer, did not "swap" or refer that customer to Momar and is now being serviced by another rep); and (3) there are no additional invoices for customers that Phillips serviced while an employee of NCH? I know some of these were addressed in John's email below, but we need to confirm.

Please let us know if you have any questions.

[redacted]

[redacted]

T.J. Jones
Crawford, Wishnew & Lang, PLLC
D: +1(214) 817-4505 | M: (903) 780-2752 | tjjones@cwl.law
www.cwl.law
1700 Pacific Ave., Suite 2390 Dallas, Texas 75201

**From:** Moye, John <JMoye@btlaw.com>
**Sent:** Tuesday, April 12, 2022 9:17 AM
**To:** Dave Wishnew <dwishnew@cwl.law>; T.J. Jones <tjjones@cwl.law>
**Cc:** BrandonJGilham@gmail.com; Moye, John <JMoye@btlaw.com>
**Subject:** FW: 3-25-22 Proposed Subpoenas to Momar, Inc.

Dave: I wanted to follow up on our conversation of last week and give you an update on your request for financial records related to 59 listed NCH customers to whom Phillips made sales.

As noted in my earlier correspondence, Matt Phillips has already produced invoices reflecting sales he made (including products sold and prices charged) to **41** of the customers listed in the subpoena.

I previously advised that the subpoena included **11** additional customers that Phillips has not sold to since joining Momar. These are as follows: [redacted]

On our call, I told you I would check with Momar as to the remaining customers listed in the subpoena and produce any supplemental invoices/sales records reflecting sales Phillips made to these customers. Having reviewed this matter with my client, we have identified **3** additional customers to whom Phillips made sales: [redacted] Those invoices are attached.

I am hopeful this provides you with the additional information that you need with respect to Phillips's sales activities.

If there are open questions about these customers, I am copying Brandon on this e-mail, so that follow-ups can be directed to him and Matt.

Let me know if you want to discuss. Thanks.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

BARNES & THORNBURG LLP

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
B P t W
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

**From:** Moye, John
**Sent:** Thursday, March 31, 2022 5:32 PM
**To:** 'T.J. Jones' <tjjones@cwl.law>
**Cc:** Dave Wishnew <dwishnew@cwl.law>; Moye, John <JMoye@btlaw.com>
**Subject:** 3-25-22 Proposed Subpoenas to Momar, Inc.

Dear T.J.:

I have received and reviewed your e-mail of March 25 concerning the subpoenas you are preparing to serve upon Momar in the Matt Phillips arbitration. You asked that I review those subpoenas as part of the meet and confer process and let you know if I had any issues with them.

The subpoenas you have propounded, less than a month before the hearing, seek documents and information that are almost wholly duplicative of information already obtained in discovery in the underlying case—and, moreover, the requests are unduly burdensome on Momar as a non-party to this arbitration.

As to the first subpoena, you request two categories of documents: i) documents reflecting sales made by Matt Phillips to a list of 59 customers, including revenue received from such sales and the products sold; and ii) "documents sufficient to identify the manner in which Phillips is compensated as a Momar employee." Yet NCH is already in possession of virtually all this information—which it has received in the normal course of fact discovery in the underlying Phillips case.

Indeed, as to category #1, Phillips has already produced in discovery a substantial number of invoices reflecting sales to NCH's customers since joining Momar. Those invoices reflect sales to 41 of the 59 customers listed in the subpoena, and they further list the products Phillips sold and the revenues received from such sales. (As noted below, Phillips did not receive commissions on any of those sales.) Another 11 customers on your list are customers to whom Phillips has never made a sale.

Thus, of the 59 customers listed in the document subpoena, 52 of those customers are ones for whom NCH already has the pertinent documentation or ones for which there is no responsive information. We fail to understand why Momar, as a non-party, should be burdened with the exercise of re-producing to NCH the materials that it has already obtained through fact discovery in the Phillips case. In addition, any "follow up" on these customers or invoices should be directed to Phillips, who is a party to the arbitration and who produced these items in the first place.

As to category #2, Phillips has similarly already provided the information requested. Specifically, he has produced his employment agreement with Momar, which reflects his annual salary. He also testified about his compensation structure during his deposition- confirming his annual salary and testifying (accurately) that he has not received any bonuses or commissions beyond his salary since joining Momar. In other words, like the customer sales request, this request seeks information that is wholly duplicative of documents and information already received in the normal course of discovery.

Finally, to the extent NCH seeks to have an undisclosed "corporate representative" testify on the document categories listed in the subpoena, we believe it would be unduly burdensome to require such testimony, given the duplicative nature of the evidence (as captured in the documents), the fact that Phillips can speak directly to these issues, and the fact that Momar is a non-party to the arbitration.

As to the other deposition subpoena, Donna Ray retired from Momar earlier this year after more than three decades with the company. We do not believe Ms. Ray should be compelled to testify at the arbitration, given her current status. Setting aside the burden of having Ms. Ray appear at the April proceeding, we further believe whatever information she would provide related to this dispute would either be duplicative (e.g. sales that have been made by Phillips) or would be beyond the scope of the arbitration (which is focused on Phillip's violation of his covenants by soliciting NCH's customers). And the relevance of her testimony is far outweighed by the burden of having Ms. Ray appear—as a retired, out-of-state employee of a non-party—particularly with less than a month's advanced notice.

In light of the above, please advise if you intend to move forward with these subpoenas. If you do, Momar intends to file objections to them with the arbitrator pursuant to JAMS Rule 21 on the grounds set forth above. I look forward to hearing from you.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

BARNES & THORNBURG LLP

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
BPtW
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

JAMS ARBITRATION

CERTIFIED LABORATORIES, a division of NCH CORPORATION,

Claimant,

VS.

MATTHEW S. PHILLIPS,

Respondent.

Arbitration Demand of NCH Corporation, JAMS Action No. 1310025855

*****************************************************

ORAL AND VIDEOTAPED DEPOSITION OF

MATTHEW S. PHILLIPS

January 5, 2022

(Reported Remotely)

*****************************************************

ORAL AND VIDEOTAPED DEPOSITION OF MATTHEW S. PHILLIPS, produced as a witness at the instance of the Claimant, and duly sworn, was taken in the above-styled and -numbered cause on the 5th day of January, 2022, from 9:31 a.m. to 3:28 p.m., via Zoom teleconference, before Eli Balderas, CSR in and for the State of Texas, reported by machine shorthand, pursuant to the Texas Rules of Civil Procedure and the provisions stated on the record or attached hereto.

A. I don't recall without looking.
Q. If you produced an invoice for these customers, that's -- you would agree with me that they're a customer for Momar now?
A. If there's an invoice.
Q. Yeah. I'm just trying to save time.
A. Yeah. No. If there's an invoice, then, yeah, they've purchased from Momar.
Q. Got it. Got it. Okay. Let's go to [redacted] All right. Who is Drew?
A. Drew works for [redacted]
Q. Got it. And was he your same contact for [redacted] when you serviced [redacted] as an NCH employee?
A. Yep.
Q. Got it. And is [redacted] now a customer of Momar?
A. Yeah. I think so.
Q. I see. Okay. So I'm just trying to get down to the -- okay. So this is November 22nd of this year. And then you -- some text messages --
A. No. That's Nov- -- huh-uh. That's November -- that's November the previous year.
Q. Of 2021?
A. Oh. I'm sorry. Yes. Yes.



Q. Yeah. So on Dec- -- he asks on December 2nd, "Hey what grease do you have that is good put in water on a gate device for [redacted]?" And then another text message later that day said, "Hello." You responded five days later and you provided him the name Donna Ray. Do you see that? Who's Donna --
A. I do.
Q. Yeah. Who's Donna Ray?
A. Yeah. She's the same lady I told you about earlier. That's the COO, I believe, of Momar.
Q. I got it. So customers called -- contacted you, you -- you gave her the contact of someone else to speak with at Momar; is that --
A. So since the injunction I have been completely out of talking with any customers, going to their sites, answering their calls, visiting with them in any form or capacity. I've been working out of the state to comply above and beyond with this agreement even though we don't agree with it. We're still trying to, you know, do what's right. And I've been staying completely out of the territory.
And so in that case there, I avoided Drew multiple times. He called me, texted me. And I was finally advised that in the case where customers called, that I would not discuss any business with them



whatsoever. I would immediately inform them that, you know, unfortunately, I'm not able to talk to you about any business at this time. But if you have, you know, anything that you need to discuss, you can contact Donna Ray at (404) 355-4580. Donna and I have not spoken. I don't know -- have any idea who's contacted her, who's been successful contacting her. I don't know anything beyond that.
Q. Do you still get paid on sales that Donna's making on those customers?
A. I don't know that Donna's making sales on those customers. And, no, I don't get paid. I'm a salaried employee.
Q. What is your salary at Momar?
A. Twenty-five a month.
Q. Okay. And you don't have any commissions -- a commission --
A. No.
Q. -- plan?
A. No.
Q. No commission.
Is there a bonus structure?
A. Not that I'm aware of.
Q. Got it. And is that all with -- in that offer package that you said that you have?



A. It should be.
Q. Okay. All right. Let's go with -- what is this? This is going to be Exh bit 13.
(Exhibit No. 13 marked.)
Q. (BY MR. WISHNEW) [redacted]
A. Uh-huh.
Q. This is a customer that you had while working at NCH?
A. That's it. Yep.
Q. How many years was [redacted] a customer of NCH?
MR. GILHAM: Objection to form.
THE WITNESS: Yeah. L ke all the rest of them, I -- I couldn't tell you a time.
Q. (BY MR. WISHNEW) So EJ at [redacted] -- I noticed y'all have a communication on August 2nd, and then there's nothing until October 5th, and then you just send a number and refer them to Donna Ray --
A. Yeah.
Q. -- without any prompting. Were you on the phone with him?
A. Yeah. In that case it looks like he probably called. There's several that I sent to you guys like that that showed that I just put a number and Donna Ray's info. And it would -- you know, if a customer called me -- because normally I didn't deal

with customers through email. It was either a text or a phone call or in person. And if a customer called me and said, hey, Matt; I would stop them immediately before I ever heard why they were calling, what they were calling about and say, hey, I appreciate you calling, I can't talk to you about anything right now, no business or anything else. But I -- you know, you can -- you can contact this person here.
Q. And you're not aware of whether [redacted] has made sales?
A. No, I'm not. No. I don't have any access to accounts or anything as far as they're concerned.
Q. Okay. All right. Let's go with [redacted] -- [redacted]
A. Okay.
(Exhibit No. 14 marked.)
Q. (BY MR. WISHNEW) This was a customer that you had at NCH, correct?
A. Yep.
Q. And this is a customer that has since taken their business to Momar, correct?
A. Yeah. That's correct. And I'll go ahead and -- and let you know what happened on this --
Q. It's -- it's -- it's better for our question and answer in a deposition that I have to ask the



question first. Otherwise, it doesn't really mean much except educate me.
So -- okay. [redacted] there's no -- there's no question from the customer, but a text message that says, "Hey bud, please call Donna Ray at" -- a number. "She'll explain. Thank you."
So will you explain -- were you on the phone with him and then provided that number?
A. Yeah. So what I was in the process of explaining -- this order was placed and we could only fulfill part of it. We were -- I don't remember if something got messed up in transit or what, but part of the order shipped. And before we could get the other out, this was when we got this order. And so he was calling me asking where the rest of the stuff was that he had purchased prior to the injunction. And that's when I sent him a text and just said, I'll -- you know, call Donna. She can explain anything to you because I can't talk to you.
Q. Have you told any customer that Donna could continue to sell -- sell to them?
A. No. I'm not aware of any conversations like that. I just told them that they can contact Donna. I don't -- I don't recall ever telling a customer that.
Q. Okay.



A. And, again, I don't know that she is selling to these customers. I -- we -- that's something we --
(Speaking simultaneously.)
Q. You just -- yeah. You don't know either way?
A. That's correct.
Q. All right. Let's go to Exh bit 15. Another email.
(Exhibit No. 15 marked.)
Q. (BY MR. WISHNEW) So this is [redacted] right?
A. That's -- yep.
Q. Okay. Explain to me what that -- what the -- Casey at [redacted] is sending to you.
A. I can't see the picture.
Q. Right. I know. That's -- that's sort of my issue too. And I -- I thought you might know offhand.
A. I never saw --
Q. This is -- this is as good as I -- yeah. What -- what I -- is it possible that this customer is sending you a screenshot of his email in which he's canceling his contract with NCH?
A. I mean, I guess it's possible. I guess if NCH got a cancellation email on April the 29th at such and such o'clock, then that might be a good guess, but I -- I can't see that.



Q. Okay. And now, again, this is another reference. And -- and -- and -- and who are you referring to when you're talking about "these cocksuckers"?
A. Oh. That's pretty much always Joe.
Q. And then you sent a voicemail?
A. I'm assuming that's the recording that he sent that -- that Adam at [redacted] sent me that was threatening him against legal action from Joe Farrier.
Q. Got it. Okay.
A. Again, all these customers know each other. So that's...
Q. All right. Okay. Let's go with Exh bit 16. This is -- well, let me go back to 15. This is -- just so I'm clear. [redacted] was a client of -- of NCH while you were a sales rep there?
A. They were a customer of mine. Yeah.
Q. While you -- yes. Okay.
And they're now a customer of Momar?
A. If they got an invoice, they are. I don't know that they've got an invoice.
(Exhibit No. 16 marked.)
Q. (BY MR. WISHNEW) All right. [redacted] Elliot. Exh bit 16. Who is Elliot?
A. Elliot works at [redacted]

EXHIBIT I

**From:** Dave Wishnew <dwishnew@cwl.law>
**Sent:** Monday, May 9, 2022 6:29 PM
**To:** Moye, John; BrandonJGilham@gmail.com
**Cc:** T.J. Jones
**Subject:** [EXTERNAL]RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

John,

Thank you for this information.
In our original email requesting this information, we requested a representation regarding Momar's sales to these customers and that such sales were not the result of "swapping." As you're aware, this is a significant issue that NCH is concerned about, especially in light of Phillips testimony and his text messages that after the injunction he directed potential customers (that he was prohibited from selling) to Momar/Donna Ray. NCH has also received information or heard rumors that many of these customers are now doing business with Momar. Thus, we need to confirm that sales were not made to those customers by another Momar rep where Phillips was the original point of contact, Phillips steered the rep to the customer, or vice versa. Sales to former NCH customers that Phillips dealt with (whether or not made by Phillips) is discoverable and we hope to work with you to get it in the most efficient way possible to avoid the subpoena discussion.
We understand that Momar will likely contend that some or all of such sales were completely independent of Phillips, and will not take your production of the invoices for those customers as an admission of liability.
I'm happy to discuss this further.

Dave

CRAWFORD WISHNEW LANG
**Dave Wishnew**
Crawford, Wishnew & Lang PLLC
D: +1 (214) 817-4502 | M: (512) 699-1642 | dwishnew@cwl.law
www.cwl.law
1700 Pacific Ave., Suite 2390 Dallas, Texas 75201

---

**From:** Moye, John <JMoye@btlaw.com>
**Sent:** Monday, May 9, 2022 2:40 PM
**To:** T.J. Jones <tjjones@cwl.law>; BrandonJGilham@gmail.com
**Cc:** Dave Wishnew <dwishnew@cwl.law>; Moye, John <JMoye@btlaw.com>
**Subject:** RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

T.J.:

We have reviewed the list of 57 customers below and have identified only one additional customer to whom Matt Phillips made sales for whom you do not have invoices: [redacted] Those invoices are attached.

Your list includes many duplicative customers that you had inquired about previously via your subpoena to Momar—including [redacted] Invoices for those customers have either already been provided, or, alternatively, have not been the subject of any sales with Matt Phillips (and thus you have no invoices for them).

To be clear, between Phillips's production, Momar's production in response to the subpoena, and this supplemental set of invoices, you should have invoices for all NCH customers that Phillips has sold to since joining Momar. If you are missing invoices, it is because they have not been the subject of any sales.

To the extent the settlement proposal you circulated in late April was predicated on a damages model that factored in sales to these additional 57 customers, please confirm that you will be revising your damages calculation accordingly to remove such lost sales.

Thanks.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.
ATLANTA BUSINESS CHRONICLE
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

**From:** T.J. Jones <tjjones@cwl.law>
**Sent:** Thursday, April 28, 2022 1:47 PM
**To:** Moye, John <JMoye@btlaw.com>; BrandonJGilham@gmail.com
**Cc:** Dave Wishnew <dwishnew@cwl.law>
**Subject:** [EXTERNAL]RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

John & Brandon,

I wanted to follow up on our request for invoices related to customers Phillips serviced as an employee of NCH. We have several customers that we show as lost to Phillips after his departure from NCH, or that Phillips sold to during his employment, that we do not have corresponding Momar invoices for. Can you confirm that: (1) Momar does not have invoices to these clients since Phillips' departure from NCH; or (2) that invoices to such customers are unrelated to Phillips? (i.e. that Phillips did not have contact with the customer, did not "swap" or refer that customer to Momar and is now being serviced by another rep); and (3) there are no additional invoices for customers that Phillips serviced while an employee of NCH? I know some of these were addressed in John's email below, but we need to confirm.

Please let us know if you have any questions.

[redacted]

[redacted]

| | | | |
|---|---|---|---|
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |

T.J. Jones
Crawford, Wishnew & Lang, PLLC
D: +1(214) 817-4505 | M: (903) 780-2752 | tjjones@cwl.law
www.cwl.law
1700 Pacific Ave., Suite 2390 Dallas, Texas 75201

---

**From:** Moye, John <JMoye@btlaw.com>
**Sent:** Tuesday, April 12, 2022 9:17 AM
**To:** Dave Wishnew <dwishnew@cwl.law>; T.J. Jones <tjjones@cwl.law>
**Cc:** BrandonJGilham@gmail.com; Moye, John <JMoye@btlaw.com>
**Subject:** FW: 3-25-22 Proposed Subpoenas to Momar, Inc.

Dave: I wanted to follow up on our conversation of last week and give you an update on your request for financial records related to 59 listed NCH customers to whom Phillips made sales.

As noted in my earlier correspondence, Matt Phillips has already produced invoices reflecting sales he made (including products sold and prices charged) to **41** of the customers listed in the subpoena.

I previously advised that the subpoena included **11** additional customers that Phillips has not sold to since joining Momar. These are as follows: [redacted]

On our call, I told you I would check with Momar as to the remaining customers listed in the subpoena and produce any supplemental invoices/sales records reflecting sales Phillips made to these customers. Having reviewed this matter with my client, we have identified **3** additional customers to whom Phillips made sales: [redacted] Those invoices are attached.

I am hopeful this provides you with the additional information that you need with respect to Phillips's sales activities.

If there are open questions about these customers, I am copying Brandon on this e-mail, so that follow-ups can be directed to him and Matt.

Let me know if you want to discuss. Thanks.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

**From:** Moye, John
**Sent:** Thursday, March 31, 2022 5:32 PM
**To:** 'T.J. Jones' <tjjones@cwl.law>
**Cc:** Dave Wishnew <dwishnew@cwl.law>; Moye, John <JMoye@btlaw.com>
**Subject:** 3-25-22 Proposed Subpoenas to Momar, Inc.

Dear T.J.:

I have received and reviewed your e-mail of March 25 concerning the subpoenas you are preparing to serve upon Momar in the Matt Phillips arbitration. You asked that I review those subpoenas as part of the meet and confer process and let you know if I had any issues with them.

The subpoenas you have propounded, less than a month before the hearing, seek documents and information that are almost wholly duplicative of information already obtained in discovery in the underlying case—and, moreover, the requests are unduly burdensome on Momar as a non-party to this arbitration.

As to the first subpoena, you request two categories of documents: i) documents reflecting sales made by Matt Phillips to a list of 59 customers, including revenue received from such sales and the products sold; and ii) "documents sufficient to identify the manner in which Phillips is compensated as a Momar employee." Yet NCH is already in possession of virtually all this information—which it has received in the normal course of fact discovery in the underlying Phillips case.

Indeed, as to category #1, Phillips has already produced in discovery a substantial number of invoices reflecting sales to NCH's customers since joining Momar. Those invoices reflect sales to 41 of the 59 customers listed in the subpoena, and they further list the products Phillips sold and the revenues received from such sales. (As noted below, Phillips did not receive commissions on any of those sales.) Another 11 customers on your list are customers to whom Phillips has never made a sale.

Thus, of the 59 customers listed in the document subpoena, <u>52</u> of those customers are ones for whom NCH already has the pertinent documentation or ones for which there is no responsive information. We fail to understand why Momar, as a non-party, should be burdened with the exercise of re-producing to NCH the materials that it has already obtained through fact discovery in the Phillips case. In addition, any "follow up" on these customers or invoices should be directed to Phillips, who is a party to the arbitration and who produced these items in the first place.

As to category #2, Phillips has similarly already provided the information requested. Specifically, he has produced his employment agreement with Momar, which reflects his annual salary. He also testified about his compensation

structure during his deposition- confirming his annual salary and testifying (accurately) that he has not received any bonuses or commissions beyond his salary since joining Momar. In other words, like the customer sales request, this request seeks information that is wholly duplicative of documents and information already received in the normal course of discovery.

Finally, to the extent NCH seeks to have an undisclosed "corporate representative" testify on the document categories listed in the subpoena, we believe it would be unduly burdensome to require such testimony, given the duplicative nature of the evidence (as captured in the documents), the fact that Phillips can speak directly to these issues, and the fact that Momar is a non-party to the arbitration.

As to the other deposition subpoena, Donna Ray retired from Momar earlier this year after more than three decades with the company. We do not believe Ms. Ray should be compelled to testify at the arbitration, given her current status. Setting aside the burden of having Ms. Ray appear at the April proceeding, we further believe whatever information she would provide related to this dispute would either be duplicative (e.g. sales that have been made by Phillips) or would be beyond the scope of the arbitration (which is focused on Phillip's violation of his covenants by soliciting NCH's customers). And the relevance of her testimony is far outweighed by the burden of having Ms. Ray appear—as a retired, out-of-state employee of a non-party—particularly with less than a month's advanced notice.

In light of the above, please advise if you intend to move forward with these subpoenas. If you do, Momar intends to file objections to them with the arbitrator pursuant to JAMS Rule 21 on the grounds set forth above. I look forward to hearing from you.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

BARNES & THORNBURG LLP

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
B P t W
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your

computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

EXHIBIT J

**From:** Moye, John
**Sent:** Wednesday, May 11, 2022 3:53 PM
**To:** Dave Wishnew; BrandonJGilham@gmail.com
**Cc:** T.J. Jones
**Subject:** RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

Dave:

I want to respond to your e-mail below.

To be clear, neither Phillips nor Momar have engaged in the conduct you describe, i.e. "swapping" out accounts for which Phillips was responsible for and allocating them to another Momar sales representative.

Phillips made clear in his deposition that once the injunction issued, he was wholly frozen out of his accounts and had no ability to access them. Moreover, he was explicitly told not to communicate with them (other than to tell them he could not talk to them) and was advised to direct any questions about his inability to communicate to Donna Ray. He has abided by those parameters since the injunction was issued in September 2021. Phillips has not made introductions to other representatives, nor has he visited prohibited customers to make introductions to another "replacement" rep.

Similarly, NCH appears to continue in its belief that Donna Ray somehow took Phillips's accounts and allocated them to a different rep. This belief is unsupported by the evidence. Phillips testified in his deposition that he was simply told to direct any communications to Ms. Ray, but made clear that he had no idea whether those customers ultimately communicated with Ms. Ray; indeed, he said he was unaware what occurred after instructing customers to call with Ms. Ray. Transcript at 147-151. To be clear, Ms. Ray did not take steps to assign customers to alternative reps or "swap" them out, post-injunction.

To the extent other former NCH customers are doing business with Momar, as you suggest, this has not taken place as a result of Matt Phillips' solicitation efforts, but for other reasons and/or the efforts of other sales representatives (without Phillips's involvement).

I hope this clears up any confusion on this issue. Momar does not have any further invoices to produce, other than the ones already provided (i.e. those to whom Phillips made sales pre-injunction).

Thanks.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.
ATLANTA BUSINESS CHRONICLE
BPtW
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

**From:** Dave Wishnew <dwishnew@cwl.law>
**Sent:** Monday, May 9, 2022 6:29 PM
**To:** Moye, John <JMoye@btlaw.com>; BrandonJGilham@gmail.com
**Cc:** T.J. Jones <tjjones@cwl.law>
**Subject:** [EXTERNAL]RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

John,

Thank you for this information.
In our original email requesting this information, we requested a representation regarding Momar's sales to these customers and that such sales were not the result of "swapping." As you're aware, this is a significant issue that NCH is concerned about, especially in light of Phillips testimony and his text messages that after the injunction he directed potential customers (that he was prohibited from selling) to Momar/Donna Ray. NCH has also received information or heard rumors that many of these customers are now doing business with Momar. Thus, we need to confirm that sales were not made to those customers by another Momar rep where Phillips was the original point of contact, Phillips steered the rep to the customer, or vice versa. Sales to former NCH customers that Phillips dealt with (whether or not made by Phillips) is discoverable and we hope to work with you to get it in the most efficient way possible to avoid the subpoena discussion.
We understand that Momar will likely contend that some or all of such sales were completely independent of Phillips, and will not take your production of the invoices for those customers as an admission of liability.
I'm happy to discuss this further.

Dave

CRAWFORD WISHNEW LANG
**Dave Wishnew**
Crawford, Wishnew & Lang PLLC
D: +1 (214) 817-4502 | M: (512) 699-1642 | dwishnew@cwl.law
www.cwl.law
1700 Pacific Ave., Suite 2390 Dallas, Texas 75201

**From:** Moye, John <JMoye@btlaw.com>
**Sent:** Monday, May 9, 2022 2:40 PM
**To:** T.J. Jones <tjjones@cwl.law>; BrandonJGilham@gmail.com
**Cc:** Dave Wishnew <dwishnew@cwl.law>; Moye, John <JMoye@btlaw.com>
**Subject:** RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

T.J.:

We have reviewed the list of 57 customers below and have identified only one additional customer to whom Matt Phillips made sales for whom you do not have invoices: [redacted] Those invoices are attached.

Your list includes many duplicative customers that you had inquired about previously via your subpoena to Momar—including [redacted] Invoices for those customers have either already been provided, or, alternatively, have not been the subject of any sales with Matt Phillips (and thus you have no invoices for them).

To be clear, between Phillips's production, Momar's production in response to the subpoena, and this supplemental set of invoices, you should have invoices for all NCH customers that Phillips has sold to since joining Momar. If you are missing invoices, it is because they have not been the subject of any sales.

To the extent the settlement proposal you circulated in late April was predicated on a damages model that factored in sales to these additional 57 customers, please confirm that you will be revising your damages calculation accordingly to remove such lost sales.

Thanks.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

BARNES & THORNBURG LLP

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
B P t W
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

**From:** T.J. Jones <tjjones@cwl.law>
**Sent:** Thursday, April 28, 2022 1:47 PM
**To:** Moye, John <JMoye@btlaw.com>; BrandonJGilham@gmail.com
**Cc:** Dave Wishnew <dwishnew@cwl.law>
**Subject:** [EXTERNAL]RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

John & Brandon,

I wanted to follow up on our request for invoices related to customers Phillips serviced as an employee of NCH. We have several customers that we show as lost to Phillips after his departure from NCH, or that Phillips sold to during his employment, that we do not have corresponding Momar invoices for. Can you confirm that: (1) Momar does not have invoices to these clients since Phillips' departure from NCH; or (2) that invoices to such customers are unrelated to Phillips? (i.e. that Phillips did not have contact with the customer, did not "swap" or refer that customer to Momar and is now being serviced by another rep); and (3) there are no additional invoices for customers that Phillips serviced while an employee of NCH? I know some of these were addressed in John's email below, but we need to confirm.

Please let us know if you have any questions.

[redacted]

[redacted]

T.J. Jones
Crawford, Wishnew & Lang, PLLC
D: +1(214) 817-4505 | M: (903) 780-2752 | tjjones@cwl.law
www.cwl.law
1700 Pacific Ave., Suite 2390 Dallas, Texas 75201

**From:** Moye, John <JMoye@btlaw.com>
**Sent:** Tuesday, April 12, 2022 9:17 AM
**To:** Dave Wishnew <dwishnew@cwl.law>; T.J. Jones <tjjones@cwl.law>
**Cc:** BrandonJGilham@gmail.com; Moye, John <JMoye@btlaw.com>
**Subject:** FW: 3-25-22 Proposed Subpoenas to Momar, Inc.

Dave: I wanted to follow up on our conversation of last week and give you an update on your request for financial records related to 59 listed NCH customers to whom Phillips made sales.

As noted in my earlier correspondence, Matt Phillips has already produced invoices reflecting sales he made (including products sold and prices charged) to **41** of the customers listed in the subpoena.

I previously advised that the subpoena included **11** additional customers that Phillips has not sold to since joining Momar. These are as follows: [redacted]

On our call, I told you I would check with Momar as to the remaining customers listed in the subpoena and produce any supplemental invoices/sales records reflecting sales Phillips made to these customers. Having reviewed this matter with my client, we have identified **3** additional customers to whom Phillips made sales: [redacted] Those invoices are attached.

I am hopeful this provides you with the additional information that you need with respect to Phillips's sales activities.

If there are open questions about these customers, I am copying Brandon on this e-mail, so that follow-ups can be directed to him and Matt.

Let me know if you want to discuss. Thanks.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

BARNES & THORNBURG LLP

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.
ATLANTA BUSINESS CHRONICLE
B P t W
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

**From:** Moye, John
**Sent:** Thursday, March 31, 2022 5:32 PM
**To:** 'T.J. Jones' <tjjones@cwl.law>
**Cc:** Dave Wishnew <dwishnew@cwl.law>; Moye, John <JMoye@btlaw.com>
**Subject:** 3-25-22 Proposed Subpoenas to Momar, Inc.

Dear T.J.:

I have received and reviewed your e-mail of March 25 concerning the subpoenas you are preparing to serve upon Momar in the Matt Phillips arbitration. You asked that I review those subpoenas as part of the meet and confer process and let you know if I had any issues with them.

The subpoenas you have propounded, less than a month before the hearing, seek documents and information that are almost wholly duplicative of information already obtained in discovery in the underlying case—and, moreover, the requests are unduly burdensome on Momar as a non-party to this arbitration.

As to the first subpoena, you request two categories of documents: i) documents reflecting sales made by Matt Phillips to a list of 59 customers, including revenue received from such sales and the products sold; and ii) "documents sufficient to identify the manner in which Phillips is compensated as a Momar employee." Yet NCH is already in possession of virtually all this information—which it has received in the normal course of fact discovery in the underlying Phillips case.

Indeed, as to category #1, Phillips has already produced in discovery a substantial number of invoices reflecting sales to NCH's customers since joining Momar. Those invoices reflect sales to 41 of the 59 customers listed in the subpoena, and they further list the products Phillips sold and the revenues received from such sales. (As noted below, Phillips did not receive commissions on any of those sales.) Another 11 customers on your list are customers to whom Phillips has never made a sale.

Thus, of the 59 customers listed in the document subpoena, 52 of those customers are ones for whom NCH already has the pertinent documentation or ones for which there is no responsive information. We fail to understand why Momar, as a non-party, should be burdened with the exercise of re-producing to NCH the materials that it has already obtained

through fact discovery in the Phillips case. In addition, any "follow up" on these customers or invoices should be directed to Phillips, who is a party to the arbitration and who produced these items in the first place.

As to category #2, Phillips has similarly already provided the information requested. Specifically, he has produced his employment agreement with Momar, which reflects his annual salary. He also testified about his compensation structure during his deposition- confirming his annual salary and testifying (accurately) that he has not received any bonuses or commissions beyond his salary since joining Momar. In other words, like the customer sales request, this request seeks information that is wholly duplicative of documents and information already received in the normal course of discovery.

Finally, to the extent NCH seeks to have an undisclosed "corporate representative" testify on the document categories listed in the subpoena, we believe it would be unduly burdensome to require such testimony, given the duplicative nature of the evidence (as captured in the documents), the fact that Phillips can speak directly to these issues, and the fact that Momar is a non-party to the arbitration.

As to the other deposition subpoena, Donna Ray retired from Momar earlier this year after more than three decades with the company. We do not believe Ms. Ray should be compelled to testify at the arbitration, given her current status. Setting aside the burden of having Ms. Ray appear at the April proceeding, we further believe whatever information she would provide related to this dispute would either be duplicative (e.g. sales that have been made by Phillips) or would be beyond the scope of the arbitration (which is focused on Phillip's violation of his covenants by soliciting NCH's customers). And the relevance of her testimony is far outweighed by the burden of having Ms. Ray appear—as a retired, out-of-state employee of a non-party—particularly with less than a month's advanced notice.

In light of the above, please advise if you intend to move forward with these subpoenas. If you do, Momar intends to file objections to them with the arbitrator pursuant to JAMS Rule 21 on the grounds set forth above. I look forward to hearing from you.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

BARNES & THORNBURG LLP

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
BPtW
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

EXHIBIT K

**From:** Dave Wishnew <dwishnew@cwl.law>
**Sent:** Wednesday, May 11, 2022 6:40 PM
**To:** Moye, John; BrandonJGilham@gmail.com
**Cc:** T.J. Jones
**Subject:** [EXTERNAL]RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

John,

I appreciate your cooperation through this process. Unfortunately, this response does not fully answer the questions we raised regarding Momar's sales to NCH customers. For instance, your response states, "To be clear, Ms. Ray did not take steps to assign customers to alternative reps or "swap" them out, post-injunction." Your response did not state that no sales were made to those customers or that Phillips did not pass NCH customers off to other sales representatives during his employment with Momar. In addition, your response makes a distinction between "swapping" on one hand and Phillips providing contact information for NCH clients to Ms. Ray on the other. While you claim that Ms. Ray did not take steps to assign the customer to an alternative rep, and that Phillips was not a part of the communication beyond forwarding to Ms. Ray, if Ms. Ray took contact information from Phillips and sales were subsequently made to a customer based on Phillips forwarding the client to Ms. Ray, that is swapping, and NCH is entitled to see those sales. In addition, if Momar made a sale to an NCH customer based on information provided by Phillips, NCH is entitled to see that sales information. From your response, you state that to the extent former NCH customers are doing business with Momar, it is unrelated to Phillips, however NCH has no way to verify representation and you have not produced that sales information. From your response, I gather that you are opposed to producing this sales data.

To be clear, I do not think you are being intentionally deceptive or obstructive and do not intend this email to suggest otherwise. However, we are running out of time to continue to go back and forth on this issue prior to the hearing. For that reason, we will be submitting our proposed subpoenas to the Arbitrator today, and will forward to you should the Arbitrator sign the subpoenas. I know from your email prior to the last setting you intend to object to the subpoenas. We will request that your objection be heard as part of the pre-hearing conference next Friday, May 20, 2022. I am available to discuss tomorrow if you want to jump on a call.

Thanks,
Dave

CRAWFORD WISHNEW LANG

**Dave Wishnew**
Crawford, Wishnew & Lang PLLC
D: +1 (214) 817-4502 | M: (512) 699-1642 | dwishnew@cwl.law
www.cwl.law
1700 Pacific Ave., Suite 2390 Dallas, Texas 75201

**From:** Moye, John <JMoye@btlaw.com>
**Sent:** Wednesday, May 11, 2022 2:53 PM
**To:** Dave Wishnew <dwishnew@cwl.law>; BrandonJGilham@gmail.com
**Cc:** T.J. Jones <tjjones@cwl.law>
**Subject:** RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

Dave:

I want to respond to your e-mail below.

To be clear, neither Phillips nor Momar have engaged in the conduct you describe, i.e. "swapping" out accounts for which Phillips was responsible for and allocating them to another Momar sales representative.

Phillips made clear in his deposition that once the injunction issued, he was wholly frozen out of his accounts and had no ability to access them. Moreover, he was explicitly told not to communicate with them (other than to tell them he could not talk to them) and was advised to direct any questions about his inability to communicate to Donna Ray. He has abided by those parameters since the injunction was issued in September 2021. Phillips has not made introductions to other representatives, nor has he visited prohibited customers to make introductions to another "replacement" rep.

Similarly, NCH appears to continue in its belief that Donna Ray somehow took Phillips's accounts and allocated them to a different rep. This belief is unsupported by the evidence. Phillips testified in his deposition that he was simply told to direct any communications to Ms. Ray, but made clear that he had no idea whether those customers ultimately communicated with Ms. Ray; indeed, he said he was unaware what occurred after instructing customers to call with Ms. Ray. Transcript at 147-151. To be clear, Ms. Ray did not take steps to assign customers to alternative reps or "swap" them out, post-injunction.

To the extent other former NCH customers are doing business with Momar, as you suggest, this has not taken place as a result of Matt Phillips' solicitation efforts, but for other reasons and/or the efforts of other sales representatives (without Phillips's involvement).

I hope this clears up any confusion on this issue. Momar does not have any further invoices to produce, other than the ones already provided (i.e. those to whom Phillips made sales pre-injunction).

Thanks.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

BARNES & THORNBURG LLP

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
B P t W
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

**From:** Dave Wishnew <dwishnew@cwl.law>
**Sent:** Monday, May 9, 2022 6:29 PM
**To:** Moye, John <JMoye@btlaw.com>; BrandonJGilham@gmail.com
**Cc:** T.J. Jones <tjjones@cwl.law>
**Subject:** [EXTERNAL]RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

John,

Thank you for this information.
In our original email requesting this information, we requested a representation regarding Momar's sales to these customers and that such sales were not the result of "swapping." As you're aware, this is a significant issue that NCH is concerned about, especially in light of Phillips testimony and his text messages that after the injunction he directed potential customers (that he was prohibited from selling) to Momar/Donna Ray. NCH has also received information or heard rumors that many of these customers are now doing business with Momar. Thus, we need to confirm that sales were not made to those customers by another Momar rep where Phillips was the original point of contact, Phillips steered the rep to the customer, or vice versa. Sales to former NCH customers that Phillips dealt with (whether or not made by Phillips) is discoverable and we hope to work with you to get it in the most efficient way possible to avoid the subpoena discussion.
We understand that Momar will likely contend that some or all of such sales were completely independent of Phillips, and will not take your production of the invoices for those customers as an admission of liability.
I'm happy to discuss this further.

Dave

CRAWFORD WISHNEW LANG

**Dave Wishnew**
Crawford, Wishnew & Lang PLLC
D: +1 (214) 817-4502 | M: (512) 699-1642 | dwishnew@cwl.law
www.cwl.law
1700 Pacific Ave., Suite 2390 Dallas, Texas 75201

---

**From:** Moye, John <JMoye@btlaw.com>
**Sent:** Monday, May 9, 2022 2:40 PM
**To:** T.J. Jones <tjjones@cwl.law>; BrandonJGilham@gmail.com
**Cc:** Dave Wishnew <dwishnew@cwl.law>; Moye, John <JMoye@btlaw.com>
**Subject:** RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

T.J.:

We have reviewed the list of 57 customers below and have identified only one additional customer to whom Matt Phillips made sales for whom you do not have invoices: [redacted] Those invoices are attached.

Your list includes many duplicative customers that you had inquired about previously via your subpoena to Momar—including [redacted] Invoices for those customers have either already been provided, or, alternatively, have not been the subject of any sales with Matt Phillips (and thus you have no invoices for them).

To be clear, between Phillips's production, Momar's production in response to the subpoena, and this supplemental set of invoices, you should have invoices for all NCH customers that Phillips has sold to since joining Momar. If you are missing invoices, it is because they have not been the subject of any sales.

To the extent the settlement proposal you circulated in late April was predicated on a damages model that factored in sales to these additional 57 customers, please confirm that you will be revising your damages calculation accordingly to remove such lost sales.

Thanks.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
BPtW
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

**From:** T.J. Jones <tjjones@cwl.law>
**Sent:** Thursday, April 28, 2022 1:47 PM
**To:** Moye, John <JMoye@btlaw.com>; BrandonJGilham@gmail.com
**Cc:** Dave Wishnew <dwishnew@cwl.law>
**Subject:** [EXTERNAL]RE: 3-25-22 Proposed Subpoenas to Momar, Inc.

John & Brandon,

I wanted to follow up on our request for invoices related to customers Phillips serviced as an employee of NCH. We have several customers that we show as lost to Phillips after his departure from NCH, or that Phillips sold to during his employment, that we do not have corresponding Momar invoices for. Can you confirm that: (1) Momar does not have invoices to these clients since Phillips' departure from NCH; or (2) that invoices to such customers are unrelated to Phillips? (i.e. that Phillips did not have contact with the customer, did not "swap" or refer that customer to Momar and is now being serviced by another rep); and (3) there are no additional invoices for customers that Phillips serviced while an employee of NCH? I know some of these were addressed in John's email below, but we need to confirm.

Please let us know if you have any questions.

| | | | |
|---|---|---|---|
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |
| | [redacted] | | [redacted] |

[redacted]

T.J. Jones
Crawford, Wishnew & Lang, PLLC
D: +1(214) 817-4505 | M: (903) 780-2752 | tjjones@cwl.law
www.cwl.law
1700 Pacific Ave., Suite 2390 Dallas, Texas 75201

---

**From:** Moye, John <JMoye@btlaw.com>
**Sent:** Tuesday, April 12, 2022 9:17 AM
**To:** Dave Wishnew <dwishnew@cwl.law>; T.J. Jones <tjjones@cwl.law>
**Cc:** BrandonJGilham@gmail.com; Moye, John <JMoye@btlaw.com>
**Subject:** FW: 3-25-22 Proposed Subpoenas to Momar, Inc.

Dave: I wanted to follow up on our conversation of last week and give you an update on your request for financial records related to 59 listed NCH customers to whom Phillips made sales.

As noted in my earlier correspondence, Matt Phillips has already produced invoices reflecting sales he made (including products sold and prices charged) to **41** of the customers listed in the subpoena.

I previously advised that the subpoena included **11** additional customers that Phillips has not sold to since joining Momar. These are as follows: [redacted]

On our call, I told you I would check with Momar as to the remaining customers listed in the subpoena and produce any supplemental invoices/sales records reflecting sales Phillips made to these customers. Having reviewed this matter with my client, we have identified **3** additional customers to whom Phillips made sales: [redacted] Those invoices are attached.

I am hopeful this provides you with the additional information that you need with respect to Phillips's sales activities.

If there are open questions about these customers, I am copying Brandon on this e-mail, so that follow-ups can be directed to him and Matt.

Let me know if you want to discuss. Thanks.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
BPtW
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

**From:** Moye, John
**Sent:** Thursday, March 31, 2022 5:32 PM
**To:** 'T.J. Jones' <tjjones@cwl.law>
**Cc:** Dave Wishnew <dwishnew@cwl.law>; Moye, John <JMoye@btlaw.com>
**Subject:** 3-25-22 Proposed Subpoenas to Momar, Inc.

Dear T.J.:

I have received and reviewed your e-mail of March 25 concerning the subpoenas you are preparing to serve upon Momar in the Matt Phillips arbitration. You asked that I review those subpoenas as part of the meet and confer process and let you know if I had any issues with them.

The subpoenas you have propounded, less than a month before the hearing, seek documents and information that are almost wholly duplicative of information already obtained in discovery in the underlying case—and, moreover, the requests are unduly burdensome on Momar as a non-party to this arbitration.

As to the first subpoena, you request two categories of documents: i) documents reflecting sales made by Matt Phillips to a list of 59 customers, including revenue received from such sales and the products sold; and ii) "documents sufficient to identify the manner in which Phillips is compensated as a Momar employee." Yet NCH is already in possession of virtually all this information—which it has received in the normal course of fact discovery in the underlying Phillips case.

Indeed, as to category #1, Phillips has already produced in discovery a substantial number of invoices reflecting sales to NCH's customers since joining Momar. Those invoices reflect sales to 41 of the 59 customers listed in the subpoena, and they further list the products Phillips sold and the revenues received from such sales. (As noted below, Phillips did not receive commissions on any of those sales.) Another 11 customers on your list are customers to whom Phillips has never made a sale.

Thus, of the 59 customers listed in the document subpoena, 52 of those customers are ones for whom NCH already has the pertinent documentation or ones for which there is no responsive information. We fail to understand why Momar, as a non-party, should be burdened with the exercise of re-producing to NCH the materials that it has already obtained through fact discovery in the Phillips case. In addition, any "follow up" on these customers or invoices should be directed to Phillips, who is a party to the arbitration and who produced these items in the first place.

As to category #2, Phillips has similarly already provided the information requested. Specifically, he has produced his employment agreement with Momar, which reflects his annual salary. He also testified about his compensation structure during his deposition- confirming his annual salary and testifying (accurately) that he has not received any bonuses or commissions beyond his salary since joining Momar. In other words, like the customer sales request, this request seeks information that is wholly duplicative of documents and information already received in the normal course of discovery.

Finally, to the extent NCH seeks to have an undisclosed "corporate representative" testify on the document categories listed in the subpoena, we believe it would be unduly burdensome to require such testimony, given the duplicative

nature of the evidence (as captured in the documents), the fact that Phillips can speak directly to these issues, and the fact that Momar is a non-party to the arbitration.

As to the other deposition subpoena, Donna Ray retired from Momar earlier this year after more than three decades with the company. We do not believe Ms. Ray should be compelled to testify at the arbitration, given her current status. Setting aside the burden of having Ms. Ray appear at the April proceeding, we further believe whatever information she would provide related to this dispute would either be duplicative (e.g. sales that have been made by Phillips) or would be beyond the scope of the arbitration (which is focused on Phillip's violation of his covenants by soliciting NCH's customers). And the relevance of her testimony is far outweighed by the burden of having Ms. Ray appear—as a retired, out-of-state employee of a non-party—particularly with less than a month's advanced notice.

In light of the above, please advise if you intend to move forward with these subpoenas. If you do, Momar intends to file objections to them with the arbitrator pursuant to JAMS Rule 21 on the grounds set forth above. I look forward to hearing from you.

**John Moye** | Partner
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Suite 1700, Atlanta, GA 30305
Direct: (404) 264-4006 | Mobile: (919) 802-4436

BARNES & THORNBURG LLP

Atlanta | Boston | California | Chicago | Delaware | Indiana | Michigan
Minneapolis | New York | Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

ATLANTA BUSINESS CHRONICLE
BPtW
2021 BEST PLACES TO WORK

Visit our Subscription Center to sign up for legal insights and events.

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your

computer system. We do not waive attorney-client or work product privilege by the transmission of this message.